# UNITED STATES DISTRICT COURT

## FOR

## THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CARLOS AGUSTO SENFF COSTA, )<br><br>Address:    Av. Presidente Venselau Bas )<br>           N 1893 Torre Apt. 75 )<br>           Lindoia-Curtiba-Parana-Brazil )<br><br>     And )<br><br>LUCAS PONZONI, )<br><br>Address:    Porto Arabia Tower 13 apt 1408, )<br>           The Pearl )<br>           Doha, Qatar )<br>           Zip code 00000 )<br><br>     And )<br><br>FERNANDO SILVEIRA DA CUNHA, )<br><br>Address:    Rua Expedicionário Mario Alves )<br>           de Oliveira, 595 )<br>           São Luiz )<br>           Belo Horizonte – MG )<br>           Brazil, 31.310-010 )<br><br>     And )<br><br>ROBERTO BIVAR DE MORAES, )<br><br>Address:    Rua Jandiro Joaquim Pereira, 70 )<br>           São Paulo – SP – 05658-000 )<br>           Brazil )<br><br>     And )<br><br>FELIPE MARTINS, )<br><br>Address:    25 Selby Street )| **COMPLAINT FOR DAMAGES AND DECLARATORY JUDGMENT**<br><br>Case No.:    _____<br><br><br>**JURY TRIAL DEMANDED** |

Toronto, OT, Canada M4Y0E6)                    )

And                                            )
                                               )
GIULIANO CARRIEL VALLESI,                      )
                                               )
Address:       Av. Heraclito Fontoura Sobral   )
               Pinto 1855                       )
               CS570                            )
               Ribeirao Preto – SP              )
               Brazil  14022-000                )
                                               )
               And                              )
                                               )
JOSE LUIZ MARANHO,                             )
                                               )
Address:       2741 Marques de Pombal Avenue   )
               Unit 22                           )
               Campo Grande, Brazil 79041-080   )
                                               )
                                               )
               And                              )
                                               )
VINICIUS RUEDA FERREIRA,                       )
                                               )
Address:       Rua Marret, 97, bl. 2, Apt.. 13, )
               CEP 07095-140,                    )
               Guarulhos/SP, Brazil              )
                                               )
               And                              )
                                               )
BRUNO PREONCE DOS SANTOS ALVES,                )
                                               )
Address:       Via Concordia 4                  )
               Luguno Ticino 6900                )
               Switzerland                       )
                                               )
               And                              )
                                               )
EMANOEL GOMES DE ARAUJO,                       )
                                               )
Address:       Guangfu Rd 186                    )
               Building 4 #2                      )
               Apartment 502                      )
               Kumming, Yunnan 650000             )
               China                             )

2

|  |  |
|---|---|
| And | ) |
|  | ) |
| MARCEL DE OLIVIERA DIAS MOREIRA | ) |
|  | ) |
| Address:   Flat 2 | ) |
|  | ) |

```
                                            )
        And                                 )
                                            )
MARCEL DE OLIVIERA DIAS MOREIRA             )
                                            )
Address:      Flat 2                        )
              Portobello Rd. 216 A          )
              Notting Hill                  )
              London, UK W11 1LJ            )
                                            )
              Plaintiffs,                   )
                                            )
      v.                                    )
                                            )
HAYMAN WOODWARD, PLLC,                      )
                                            )
Address:      1010 Vermont Ave., Suite 810  )
              Washington, D.C. 20005        )
                                            )
              Serve: Business Filings, Inc. )
              Registered Agent              )
              108 West 13th St.             )
              Wilmington, DE 19801          )
                                            )
        And                                 )
                                            )
HAYMAN WOODWARD HOLDINGS CORP.              )
                                            )
Address:      801 Brickell Ave., 15th Fl.   )
              Miami, FL 33131               )
                                            )
              Serve: Hayman-Woodward Corp.  )
              801 Brickell Ave., 15th Fl.   )
              Miami, FL 33131               )
                                            )
              Defendants.                   )
_____)
```

Comes now Felipe Martins ("**Martins**"), Giuliano Carriel Vallesi ("**Vallesi**"), José Luiz Maranho ("**Maranho**"), Roberto Bivar de Moraes ("**Moraes**"), Vinicius Rueda Ferreira ("**Ferreira**"), Fernando Cunha ("**Cunha**"), Carlos Costa ("Costa"), Marcel de Oliveira Dias Moreira ("**Moreira**"), Emanoel Gomes de Araujo ("**Araujo**"), Lucas Bonafer Ponzoni

("**Ponzoni**") and Bruno Proence dos Santos Alves ("**Alves**" and with the other Plaintiffs "**the Pilots**"), through undersigned counsel, and pursuant to FRCP 3, hereby files this Complaint for Damages and for Declaratory Judgment, and in support thereof states as follows:

**I.**

**Introduction**

1.      This case concerns eleven (11) Brazilian nationals, each of whom hoped to secure work visas from the United States Citizenship and Immigration Service ("**USCIS**") in order to work in the United States as airplane pilots, and how they were duped by Defendant Hayman Woodward, PLLC, an immigration law firm located in the District of Columbia, of, collectively, $244,763.00.

2.      By repeatedly using materially false and misleading promises with respect to, among other things, a "Money back-guaranty policy" incorporated into each engagement agreement and ineffectual arbitration/mediation provisions, Defendant Hayman Woodward, PLLC ("**HWPLLC**") enticed each of the Plaintiffs into engaging the firm to prepare and submit petitions to USCIS.  When USCIS rejected or denied each of the petitions for each of the Plaintiffs, each Plaintiff, consistent with their engagement agreements, sought a refund, only to be told that the money was not available. When they sought mediation/arbitration as required by the engagement agreement, they were told that the ADR was not available because no person affiliated with the law firm was licensed in the District of Columbia to practice law.  Indeed, the Defendant Hayman Woodward, PLLC is not even registered to transact business in the District of Columbia.

3.      This case is about how the pilots should be able to recover their money if not from Hayman Woodward, PLLC, then from Hayman Woodward Holdings Corp. ("**HWHC**"), as the law firm is merely the alter ego of the holding company and injustice will result if it does not bear responsibility for the law firm's debt.

## II.

## Parties

4.      Costa is a Brazilian national who resides at the address listed above. As explained in more detail herein, in 2018 he executed a contract with Defendant HWPLLC and has been harmed as a result as more fully set forth.

5.      Ponzoni is a Brazilian national who resides at the address listed above.  As explained in more detail herein, in 2018 he executed a contract with Defendant HWPLLC and has been harmed as a result as more fully set forth.

6.      Cunha is a Brazilian national who resides at the address listed above.  As explained in more detail herein, in 2018 he executed a contract with Defendant HWPLLC and has been harmed as a result as more fully set forth.

7.      Moraes is a Brazilian national who resides at the address listed above.  As explained in more detail herein, in 2018 he executed a contract with Defendant HWPLLC and has been harmed as a result as more fully set forth.

8.      Martins is a Brazilian national who resides at the address listed above.  As explained in more detail herein, in 2018 he executed a contract with Defendant HWPLLC and has been harmed as a result as more fully set forth.

9.      Vallesi is a Brazilian national who resides at the address listed above.  As explained in more detail herein, in 2018 he executed a contract with Defendant HWPLLC and has been harmed as a result as more fully set forth.

10.     Maranho is a Brazilian national who resides at the address listed above.  As explained in more detail herein, in 2018 he executed a contract with Defendant HWPLLC and has been harmed as a result as more fully set forth.

11.     Ferreira is a Brazilian national who resides at the address listed above.  As explained in more detail herein, in 2018 he executed a contract with Defendant HWPLLC and has been harmed as a result as more fully set forth.

12.     Alves is a Brazilian national who resides at the address listed above.  As explained in more detail herein, in 2018 he executed a contract with Defendant HWPLLC and has been harmed as a result as more fully set forth.

13.     Moreira is a Brazilian national who resides at the address listed above.  As explained in more detail herein, in 2018 he executed a contract with Defendant HWPLLC and has been harmed as a result as more fully set forth.

14.     Araujo is a Brazilian national who resides at the address listed above.  As explained in more detail herein, in 2018 he executed a contract with Defendant HWPLLC and has been harmed as a result as more fully set forth.

15.     HWPLLC is a Delaware Professional Limited Liability Company with its main office in Washington, D.C. at the address listed above.   HWPLLC is a fully controlled subsidiary of HWHC.

16.     HWHC is a Florida corporation with its main office located in Florida at the address above. As set forth hereinafter, it should be liable for the debts and obligations of HWPLLC as it is the alter ego of HWPLLC.

## III.

## Jurisdiction and Venue

17.     This Court has jurisdiction over this matter pursuant to 28 U.S.C.A. §1332 since all Plaintiffs are citizens of a foreign state who have claims against citizens of different States where "citizen" includes corporate entities such as those at issue here who are citizens of Delaware and Florida, but who transact business in the District of Columbia, and the amount in controversy exceeds $75,000; and supplemental jurisdiction over state claims pursuant to 28. U.S.C. §1367.

18.     Venue is proper in this Court pursuant to 28 U.S.C.A. §1391 in that Defendant HWPLLC maintains its offices and conducts business in the District of Columbia.

## IV.

## Facts Common to All Counts

## A.

## HWHC is the Alter Ego of HWPLLC

19.     HWHC is a multinational corporation founded in 1996.

20.     HWHC provides global mobility services to individuals and businesses in need of immigration services.  It provides a variety of immigration related services to individuals and business including but not limited to logistics and relocation services, real estate assistance and post-permanent residence guidance.

21.     It also provides "human capital" services which essentially are recruiting and placement services, consulting services to entrepreneurs and companies, financial services, business consulting and assistance in securing visas.

22.     HWHC delivers services to its clients through twelve operational companies in its purview. Included in those twelve operational companies is HWPLLC, an immigration law firm based in

the District of Columbia.  Those operational companies provide a wide array of services for clients, including tax services and legal services.

23.      HWHC operates through Hayman Woodward Global Mobility Services ("**HWGMS**") and has fourteen (14) people listed as part of its management "team."  Those individuals, as of the filing of this Complaint, are Leonardo Freitas ("**Freitas**"), Robert H. Weber, III ("**Weber**"), Pedro Botelho, Ana Paula Montanha, Danilo Dias, Volkan Pekiner, Luiz Franca Filho, Despina Tepelli, Diego Dales, Lucia Camargo ("**Camargo**"), Melissa Botelho, Heverton Andrade, Enio Bitencourt, and Luiz Felipe Ferreira.

24.      HWPLLC is a law firm, organized under the laws of Delaware.  As of the date of this filing, HWPLLC is <u>not</u> registered to transact business in the District of Columbia, yet it maintains an office in the District of Columbia which it considers to be the law firm's North American headquarters.

25.      HWHC also oversees all of the HWHC subsidiaries with a unity of purpose.  As the mission is described on HWHC and HWGMS's webpage, HWGMS is "composed of a growing team of consultants, lawyers, financial advisors, business managers, relocation experts and other talented and innovative professionals who are passionate about enabling global citizens to succeed."  Those lawyers are the lawyers employed by HWPLLC.

26.      In order to achieve that result, all of HWHC's subsidiaries work together to achieve the global mobility aims of the client.  HWHC uses all of the resources of the subsidiaries to achieve success for its clients.

27.      HWHC Chairman and Managing Director is Freitas.  Freitas also serves as the Managing Director of HWPLLC, but he is not an attorney.  On Freitas' Facebook page, he states that he is the "Founder" and CEO of "@HaymanWoodward."  On that same Facebook page, there is a link

to a website identified as www.LeoFreitas.com.  Once a user links to LeoFreitas.com, a user can link to other of Mr. Freitas' companies, including HWGMC and HWPLLC.

28.     Mr. Freitas states he is an entrepreneur with over 25 years of experience in government relations, international trade, and business development in the United States.  He considers himself an immigration specialist.  It is believed and therefore alleged that Mr. Freitas oversees the operations of HWHC, HWGMS and HWPLLC.  For all intents and purposes, Mr. Freitas is the "face" of "HW," in all of its forms and its subsidiaries, all of which are designed to facilitate immigration.

29.     Weber is HWHC's Global Director of Legal Affairs and its General Counsel.  Weber also serves as general counsel for the holding group's subsidiaries, including HWPLLC and HWGMS. His mailing address is 801 Brickel Ave., 15th Fl., Miami, Fl, which is the same mailing address used by other subsidiaries of HWHC.  In his capacity as Global Director of Legal Affairs and General Counsel for HWHC, Weber also assists in dispute resolution for HWPLLC.

30.     HWPLLC has six (6) attorneys listed on its web page as part of its "Team."  None of the attorneys listed –Camargo, Ronald Antonio Castellone, Maitrai Brown, Alberto Esteban Lugo Royo, Nathalie Roa, Natasha Chakraborty and Linchi Liang – are, as of this filing, licensed to practice law in the District of Columbia.

31.     Camargo is HWHC's Business Development Director and an attorney.  Even though she is not licensed to practice law in the District of Columbia, Camargo is identified as the "Lead Attorney" and Shareholder of HWPLLC. It is believed that Camargo oversees HWPLLC's operations and manages HWHC with Mr. Freitas, Weber and other members of HWHC's management team.   The management team of HWHC controls the operations of all of HWHC's subsidiaries, including HWPLLC.  HWPLLC does not tell any of its clients when they engage

HWPLLC that none of its attorneys are licensed to practice law in the District of Columbia or that they need to be licensed in the District of Columbia in order to take advantage or services offered by entities such as the District of Columbia Bar which are incorporated into the engagement agreement.

32.     An attorney named Miguel Risch ("Risch") at one time worked for or was affiliated with HWHC.  He prepared and signed corporate filings for HWHC.  He also served as an attorney for HWPLLC and handled immigration cases for the law firm.

33.     In addition to having management unity, HWPLLC and HWHC share corporate offices in Miami Florida.  In fact, almost all of HWHC's subsidiaries share the same corporate space in Miami Florida – 801 Brickel Ave., 15th Fl., Miami, FL.  Almost all of HWHC's subsidiaries entities identify that space as their corporate offices in corporate filings.

34.     HWHC, HWGMC and HWPLLC's web pages all utilize the same logos and appearance and are designed to demonstrate unity between the entities and eliminate any real distinction between the entities.  Instead of identifying separate entities on the top of the web pages, the webpages for HWPLLC and HWHC and HWGMC all simply use "HW" in identical gold lettering. The web pages for HWPLLC and HWHC/HWGMC use the same pictures for Freitas and Camargo.

35.     HWHC and HWPLLC share the same missions and objectives.  Indeed, HWHC/ HWGMC list on its web page 17 principles to guide its operations.  Those 17 principles are the same 17 principles that HWPLLC uses on its web page to describe its work ethic to potential clients.  In other words, HWPLLC and HWHC/HWGMC have unity in purpose in their operations and how they seek successful results for the client.

36.     HWHC/HWGMC and HWPLLC also maintain Facebook pages.  The entities use the same posts which are likely generated from one source – HWHC.  For example, on January 20, 2021, both HWGMC and HWPLLC posted the same message to President Joseph Biden, congratulating him on his inauguration.  The picture used on both webpages merely identifies the poster as "HW" which is the generic term for Hayman Woodward's operations.

37.     In all respects, HWHC and HWPLLC present a public image which does not, in any meaningful way, distinguish between the entities.

38.     HWHC, through its management team, exercises significant control over the decision making of its subsidiaries including HWPLLC.  The management team at HWHC makes decisions about HWPLLC's operations including staffing, internal management decisions, and dispute resolution.

39.     Moreover, all of the operations of HW's subsidiaries are interrelated and designed to support HWHC's mission – to assist persons and businesses to traverse international boundaries and conduct business internationally.  Indeed, when people engage HWPLLC, they are authorizing HWPLLC to utilize the specialty services provided by HWHC's other subsidiaries, if necessary.  For example, if an individual engages HWPLLC to secure immigration services in the United States, but a tax issue arises during the engagement, HWPLLC utilizes one of HWHC's other subsidiaries which specializes in tax services or wealth management to support the engagement of HWPLLC.  HWPLLC pays the subsidiary for the services the subsidiary provides.

40.     Plaintiffs believe, and therefore allege, that HWHC also has financial control over HWPLLC's operations.  HWHC so dominates HWPLLC's operations that it negates a separate personality between the entities.  There exists such a unity of interest and ownership between HWHC and its subsidiaries, including HWPLLC and HWGMC, that there is no significant

distinction between the entities and the ordinary person would not understand that there are any real distinctions between the entities.  HWHC's control over HWPLLC's operations is active and substantial.  Plaintiffs believe that HWHC oversees all management and financial decisions for HWPLLC, including when to settle disputes with clients or ex-clients like Plaintiffs, that HWHC oversees employment decisions for HWPLLC, and that HWHC depends on HWPLLC for business and finances in its operations.

41.    Since HWHC and HWGMC are not law firms, each relies on HWPLLC to address the legal immigration requirements for its clients.  The other subsidiaries of HWHC cannot legally oversee the legal actions that HWPLLC undertakes for its clients.  Those actions include, but are not limited to, the preparation of immigration and naturalization applications and petitions for clients seeking to secure work visas necessary to work in the United States.  HWPLLC will appear with clients at immigration interviews and hearings and assist clients with appeals when petitions are denied.  Neither HWHC not HWGMC can provide those legal services.  Thus, to the extent HWHC /HWGMC's clients require legal immigration services, those entities rely on HWPLLC to deliver them for the clients.  HWPLLC is not some mere investment for HWHC and HWGMC.  It is an alternative means for conducting business in HWHC's market and in support of HWHC's business.

42.    Thus, in addition to sharing corporate office space in Florida, there is overlap in the delivery of services to clients.  HWPLLC uses a "team" approach when delivering services to clients and relies on HWGMC and HWHC to also deliver specialized services to the clients.  When a person engages HWPLLC to assist with immigration services, HWHC notifies the individual that they are, in effect, also engaging HWHC.  The engagement agreement contains several disclosures with respect to HWPLLC's involvement with HWHC.  The engagement agreement

reads "Certain consulting services provided by our affiliated company Hayman Woodward Corp. will be invoiced to us.  These services will be paid by HAYMAN-WOODWARD PLLC from your retainer payment made to us."  (Emphasis in Original).

43.     The engagement agreement also requires, as a condition, that the client allow HWPLLC to share its fees – the fees the client pays – with HWHC.

44.     HWHC is the alter ego of HWPLLC and HWGMC.   The entities share unity of management, and purpose.   As explained herein, HWPLLC's debts, if they cannot be paid by HWPLLC, should be paid by HWHC as the alter ego of HWPLLC in order to avoid injustice.

**B.**

**HWPLLC falsely represents its qualifications to practice law in the District of Columbia and the full terms of policies in its engagement to clients.**

45.     Plaintiffs incorporate by reference herein, as if fully set forth, the factual allegations contained in paragraphs 1 to 43.

46.     In order to engage HWPLLC, potential clients must execute retainer agreements with HWPLLC.   HWPLLC prepares the engagement agreements for its potential clients seeking immigration services.

47.     As part of the bargain it strikes with potential clients seeking to engage HWPLLC, at all times relevant hereto, HWPLLC offered clients a "Money back-guaranty policy" ("**Policy**") and required that clients submit all disputes involving fees to alternative dispute resolution.

48.     In this case, the Policy has come in three versions, three of which are written and one of which is oral and which is incorporated into the final written agreement.

49.     The written Policy either provides a 100% refund or a 65% refund.

50.     The two written versions of the 100% refund Policy states either:

*Money back-guarantee Policy: The money back guarantee policy only applies for retainers paid on cases fully-submitted to USCIS which were denied up to approval of I-140 portion of the case. In the event of a denial, you may choose to refile, appeal or reopen your case before USCIS or the Board of Immigration Appeals for no additional retainer fee (additional USCIS filing fees will apply); or you may choose to receive a full refund of your retainer fee within 30 days of denial. HAYMAN-WOODWARD PLLC is not responsible for refunding any USCIS filing fees, as government fees are non-refundable. Passed the approval of I-140, the money back guarantee will not apply as the approval of I-485 is dependent upon worldwide criminal history search, prior immigration violations, and successful completion of fraud detection interview.*

Or

*Money back-guarantee policy:    The money back guarantee policies only applies for retainers paid on cases fully-submitted to USCIS which were denied.  In the event of a denial, you may choose to refile, appeal or reopen your case before USCIS or the Board of Immigration Appeals for no additional retainer fee (additional USCIS filing fees will apply); or you may chose to receive a full refund of your retainer fee.  HAYMAN-WOODWARD, PLLC is not responsible for refunding an USCIS filing fees, as government fees are non-refundable.*

51.     The written version of the 65% refund Policy states:

*Money back-guarantee Policy: The 65% money back guarantee policy only applies for retainers paid on cases fully-submitted to USCIS which were denied up to approval of I-140 portion of the case. In the event of a denial, you may choose to refile, appeal or reopen your case before USCIS or the Board of Immigration Appeals for no additional retainer fee (additional USCIS filing fees will apply); or you may choose to receive a full refund of your retainer fee within 30 days of denial. HAYMAN-WOODWARD PLLC is not responsible for refunding any USCIS filing fees, as government fees are non-refundable. Passed the approval of I-140, the money back guarantee will not apply as the approval of I-485 is dependent upon worldwide criminal history search, prior immigration violations, and successful completion of fraud detection interview.*

52.     In addition, HWPLLC and/or HWHC orally promises potential clients a refund in the event of a denial.  As identified herein, in at least two occasions, HWHC and/or HWPLLC specifically told potential clients that if they engage HWPLLC and HWPLLC submits an application to USCIA

for a "Green Card" and USCIS denies the Green Card application, then HWPLLC will refund the money the client paid for the engagement.

53.    In connection with the oral promise of a refund, HWHC and/or HWPLLC agents or employees also told potential clients that there is no risk in engaging HWPLLC in connection with immigration applications in the United States, because there are no "failed cases."  These are material representations and material terms.  The promise to return money and the statement that there are no "failed cases", i.e., denials of applications for visas, induce persons considering whether to engage HWPLLC and potential clients, like some of those who are plaintiffs herein, do, in fact rely on the representation.  However, that promise too has proven to be false as some clients have engaged HWPLLC based, in part, upon the oral representations of HWPLLC,'s employees or agents, had their immigration applications denied and demanded refunds only to not have the money returned as promised.

54.    Also, when clients engage HWPLLC, HWPLLC includes a dispute resolution provision in its agreement as the condition of the engagement.  It reads:

> *Any controversy or claim arising out of or relating to this contract, or breach thereof, shall be submitted to binding arbitration pursuant to the District of Columbia fee dispute resolution procedures.  In addition, any disputes with respect to malpractice shall be submitted to binding arbitration.  The location of the arbitration shall be in Washington D.C. and the Law of the District of Columbia shall apply.  Judgment on the award rendered by the arbitrator may be entered in any court having jurisdiction thereof.*

55.    However, the Policy is fraught with material omissions and due to other deficiencies related to HWPLLC's business operations, the dispute resolution provision is a sham.

56.    First, with respect to the Policy, despite being led to believe that there is little risk to the client in engaging HWPLLC, clients, in fact, have significant risk that they will not recover their money if they seek a refund under the Policy.

57.    HWPLLC conceals from the clients that the money clients pay for the engagement is not held in trust until all contingencies in the agreement lapse or that the money will not be available to the client should they invoke the Policy after a denial.  As a result, clients may not be able to receive their refunds. That is the case here.

58.    Second, with respect to the dispute resolution provision, despite being promised the opportunity to present fee disputes to the District of Columbia Bar fee dispute program, clients cannot utilize the District of Columbia Bar's dispute resolution program for fee disputes between them and HWPLLC.

59.    Contrary to what HPLLC represents (HWPLLC states in their engagement agreements that it is, in fact, "registered in Washington, D.C., USA."), HWPLLC is not registered to conduct business in the District of Columbia.  Moreover, none of its attorneys are licensed to practice law in the District of Columbia.  These are material facts which HWPLLC either misrepresent or conceal from clients.  Because HWPLLC is not registered to transact business in the District of Columbia and no lawyer affiliated with HWPLLC is a member of the District of Columbia Bar, clients cannot take advantage of the dispute resolution provisions contained in the agreement.

60.    Overall, the engagement is the result of a series of deceptive trade practices, reflecting misstatements, misrepresentations of qualifications and omissions of material fact, all designed to elicit an engagement and the payment of tens of thousands of dollars from foreign nationals who may not be familiar with the legal procedures applicable in the United States, and to entice them to pay money which the client may never receive back if demanded despite promises to the contrary.

61.    By omitting material facts, and using false innuendo, HWPLLC cons people like the Plaintiffs who were not born in the United States, but rather are foreign nationals who do not use

English as their first language and not familiar with business requirements in the District of Columbia, into believing that their investments of tens of thousands of dollars is low or no risk and that they can take advantage of the benefits of HWPLLC's business in the District of Columbia, namely that because it is registered to do business it can utilize the District of Columbia Bar's fee dispute resolution procedures, when neither is true.

62.     In short, HWPLLC's engagement agreement is a classic "bait and switch."  HWPLLC locates individuals from around the world who have less than perfect command of English and who are eager to secure work in the United States and present them with a complicated engagement agreement which contains materially false statements, which omits material information, and which does not accurately reflect the entirety of the parties' agreements.  HWPLLC submits petitions for the USICS knowing that the that they promised clients they could secure a refund if their applications were denied and that they could use the District of Columbia Bar rules for fee dispute resolution, when those promises were false, and not fulfilled.  Based on those promises, clients believe, first, that there will be no denials because that does not happen, second, that even if it did happen and the petition was denied, they could get their money back from HWPLLC, and third, if there was a problem, they could use the services of the District of Columbia Bar.  And, as it turns out, HWPLLC delivers on none of those promises.

63.     And, as explained hereinafter, that is exactly what happened in this case with each of the Plaintiffs.

## C.

### The Plaintiffs' Engagement of HWPLLC, HWHC, and HWGMC

### Overview of Claims

64.     Each of the Plaintiffs identified above is a Brazilian national.

65.     Each of the Plaintiffs identified above is an airplane pilot, duly licensed to work as an airline pilot in Brazil.

66.     Each of the Plaintiffs wished to secure a work visa to work as an airplane pilot in the United States.

67.     Each of the Plaintiffs engaged HWPLLC and its related entities by signing an engagement agreement with HWPLLC in hopes that HWPLLC would secure a work visa for the pilot.

68.     In all but two of the engagement agreements, HWPLLC inserted into the engagement agreement: (1) the Policy; and (2) the dispute resolution provision referenced above.

69.     In the engagement agreement, HWPLLC falsely represented it was authorized to transact business in the District of Columbia.

70.     In the engagement agreement, HWPLLC concealed that it was not eligible to utilize the District of Columbia Bar's fee dispute resolution methods.

71.     In two cases, HWPLLC made oral promises to return money paid in the event of a denial, and falsely claimed that HWPLLC's applications are never denied.

72.     In connection with each engagement, HWPLLC assigned an attorney to represent the client and that attorney prepared an application for citizenship or immigration which was submitted to USCIS and told the clients that HWPLLC would, if necessary, incorporate the assistance of HWHC and/or other HWHC subsidiaries.

73.     In each case, and in connection with each Petition HWPLLC submitted to USCIS for the respective Plaintiff, the petition/application was denied.

74.     Each of the Plaintiffs thereafter and consistent with their respective engagement agreement, requested a refund per the applicable Policy.

75.     In each case, HWPLLC failed to return the money as promised.

76.     Thereafter, each Plaintiff learned that the money was not available and that they could not utilize the District of Columbia Bar dispute resolution procedures because no attorney at HWPLLC was licensed to practice law in the District of Columbia.

**D.**

**Facts relating to specific Plaintiffs.**

**1.**

**Costa**

77.     Costa is an adult who lives at the address stated above.  He is a Brazilian national and an airplane pilot.

78.     On November 6, 2018, Costa engaged HWPLLC, HWHC and/or HWGMC.  HWPLLC was engaged in order to prepare for Costa a Form I-140 Immigration Petition for Alien Worker ("Petition") for submission to the USCIS.  Exhibit 1 (November 6, 2018 Contract between HWPLLC and Costa)

79.     In connection with the engagement HWPLLC required that Costa sign a retainer agreement and pay $21,750 in retainer fees.

80.     The engagement agreement Costa signed stated as follows:

> ***Money back-guarantee Policy:*** *The money back guarantee policy only applies for retainers paid on cases fully-submitted to USCIS which were denied up to approval of I-140 portion of the case. In the event of a denial, you may choose to refile, appeal or reopen your case before USCIS or the Board of Immigration Appeals for no additional retainer fee (additional USCIS filing fees will apply); or you may choose to receive a full refund of your retainer fee within 30 days of denial. HAYMAN-WOODWARD PLLC is not responsible for refunding any USCIS filing fees, as government fees are non-refundable. Passed the approval of I-140, the money back guarantee will not apply as the approval of I-485 is dependent upon worldwide criminal history search, prior immigration violations, and successful completion of fraud detection interview.*

81.    The engagement agreement also contained the dispute resolution provision expressed above and incorporated herein by reference.

82.    Costa executed the engagement agreement.   On November 6, 2018, HWPLLC issued Invoice No. 3465 to Costa.  By December 6, 2018, Costa paid HWPLLC $21,750.

83.    Thereafter, HWPLLC prepared a Petition for Costa and submitted same to USCIS.

84.    USCIS denied Costa's Petition.

85.    In accordance with the engagement agreement, Costa demanded a refund.

86.    HWPLLC failed to refund money to Costa as required.

87.    HWPLLC concealed from Costa that the money he paid would not be available to reimburse him should he demand a refund upon denial.

88.    Costa could not utilize the arbitration provision due to the fact that no person working at HWPLLC was licensed to practice law in the District of Columbia. HWPLLC concealed that fact from Costa.

**2.**

**Cunha**

89.     Cunha is an adult who lives at the address stated above.  He is a Brazilian national and an airplane pilot.

90.    On May 14, 2018, Cunha engaged HWPLLC, HWHC and HWGMC.   HWPLLC was engaged in order to prepare a Petition for Mr. Cunha and submit same to USCIS to secure a work visa for Cunha.  Exhibit 2 (May 14, 2018 Contract between HWPLLC and Cunha).

91.    In connection with the engagement, HWPLLC required Cunha to sign an engagement agreement and to pay $25,000 in retainer fees.

92.    The engagement agreement stated:

> **Money back-guarantee policy:** *The money back guarantee policies only applies for retainers paid on cases fully-submitted to USCIS which were denied. In the event of a denial, you may choose to refile, appeal or reopen your case before USCIS or the Board of Immigration Appeals for no additional retainer fee (additional USCIS filing fees will apply); or you may chose to receive a full refund of your retainer fee. HAYMAN-WOODWARD, PLLC is not responsible for refunding an USCIS filing fees, as government fees are non-refundable.*

93.    The engagement agreement contained the dispute resolution provision stated above.

94.    Cunha executed the engagement agreement. On May 15, 2018, HWPLLC issued an invoice to Cunha and by June 25, 2018, Cunha paid HWPLLC $25,000 as required.

95.    HWPLLC prepared a Petition for Cunha and submitted same to USCIS, but USCIS denied the Petition.

96.    Consistent with the engagement agreement, Cunha demanded a refund of the retainer per the Money back guaranty policy.

97.    Instead of refunding Cunha, HWPLLC issued a release to Cunha. Neither the engagement agreement nor the Money back guaranty policy required that Cunha execute a release in order to receive his money.

98.    HWPLLC agreed to refund Cunha $21,013.00.

99.    Even though it was not required by the engagement agreement he signed and was not required in order for him to secure his refund per the policy, Cunha signed the release HWPLLC presented.

100.    Nonetheless, HWPLLC failed to refund all of Cunha's money. HWPLLC only refunded him $11,000.00, thus still owing him $10,013.00.

101.    HWPLLC concealed from Cunha that the money he paid for the retainer would not be available to him if he demanded a refund per the Money back guaranty policy.

102.    HWPLLC concealed from Cunha that he would be unable to utilize the dispute resolution provision and the procedures offered by the District of Columbia Bar due to the fact that no attorney employed by HWPLLC was licensed to practice law in the District of Columbia.

**3.**

**Moraes**

103.    Moraes ("Moraes") is an adult who resides at the address stated above. He is a Brazilian national and an airplane pilot.

104.    On February 12, 2019, Moraes engaged HWPLLC, HWHC and HWGMC.  HWPLLC was engaged in order to prepare a Petition for Moraes and to submit same to USCIS to secure a work visa. Exhibit 3 (February 12, 2019 Contract between HWPLLC and Moraes).

105.    In connection with the engagement, Moraes was to pay HWPLLC $25,000.00 in retainer fees.

106.    The engagement agreement stated:

> ***Money back-guarantee Policy:*** *The money back guarantee policy only applies for retainers paid on cases fully-submitted to USCIS which were denied up to approval of I-140 portion of the case. In the event of a denial, you may choose to refile, appeal or reopen your case before USCIS or the Board of Immigration Appeals for no additional retainer fee (additional USCIS filing fees will apply); or you may choose to receive full refund of your retainer fee within 30 days of denial. HAYMAN-WOODWARD PLLC is not responsible for refunding any USCIS filing fees, as government fees are non-refundable. Passed the approval of I-140, the money back guarantee will not apply as the approval of I-485 is dependent upon worldwide criminal history search, prior immigration violations, and successful completion of fraud detection interview.*

107.    The engagement agreement contained the dispute resolution provision stated above.

108.    Moraes signed the engagement agreement.  On February 23, 2019, HW issued Invoice No. 4043 to Moraes and by February 14, 2019, Moraes paid HWPLLC $25,000.

109.    Thereafter, HWPLLC prepared a Petition for Moraes and submitted same to USCIS, but USCIS denied the Petition.

22

110.    Consistent with the engagement agreement, Moraes demanded a refund per the Money back-guarantee policy.

111.    HWPLLC did not refund Moraes' money as required.

112.    HWPLLC concealed from Moraes that the money he paid for the retainer would not be available to him if he demanded a refund per the Money back guaranty policy.

113.    HWPLLC concealed from Moraes that he would be unable to utilize the dispute resolution provision and the procedures offered by the District of Columbia Bar due to the fact that no attorney employed by HWPLLC was licensed to practice law in the District of Columbia.

**4.**

**Ponzoni**

114.    Ponzoni is an adult who resides at the address stated above. He is a Brazilian national and an airplane pilot.

115.    On November 22, 2018, Ponzoni engaged HWPLLC, HWHC and HWGMC.  HWPLLC was engaged in order to prepare a Petition for Ponzoni and to submit same to USCIS to secure a work visa. Exhibit 4 (November 22, 2018 Contract between HWPLLC and Ponzoni).

116.    In connection with the engagement, Ponzi was to pay HWPLLC $24,000 in retainer fees.

117.    The engagement agreement stated:

> **Money back-guarantee Policy:** *The money back guarantee policy only applies for retainers paid on cases fully-submitted to USCIS which were denied up to approval of I-140 portion of the case. In the event of a denial, you may choose to refile, appeal or reopen your case before USCIS or the Board of Immigration Appeals for no additional retainer fee (additional USCIS filing fees will apply); or you may choose to receive full refund of your retainer fee within 30 days of denial. HAYMAN-WOODWARD PLLC is not responsible for refunding any USCIS filing fees, as government fees are non-refundable. Passed the approval of I-140, the money back guarantee will not apply as the approval of I-485 is dependent upon worldwide criminal history search, prior immigration violations, and successful completion of fraud detection interview.*

118.    The engagement agreement contained the dispute resolution provision stated above.

119.    Ponzoni signed an engagement agreement.  On November 22, 2018, 2019, HW issued Invoice No. 3529 to Ponzoni and by December 23, 2018, Ponzoni paid HWPLLC $24,000.

120.    Thereafter, HWPLLC prepared a Petition for Ponzoni and submitted same to USCIS, but USCIS denied the Petition.

121.    Consistent with the engagement agreement, Ponzoni demanded a refund per the Money back-guarantee policy.

122.    HWPLLC did not refund Ponzoni money as required.

123.    HWPLLC concealed from Ponzoni that the money he paid for the retainer would not be available to him if he demanded a refund per the Money back guaranty policy.

124.    HWPLLC concealed from Ponzoni that he would be unable to utilize the dispute resolution provision and the procedures offered by the District of Columbia Bar due to the fact that no attorney employed by HWPLLC was licensed to practice law in the District of Columbia.

**5.**

**Vallesi**

125.    Vallesi is an adult who resides at the address stated above. He is a Brazilian national and an airplane pilot.

126.    On December 20, 2018, Vallesi engaged HWPLLC, HWHC and HWGMC.  HWPLLC was engaged in order to prepare a Petition for Vallesi and to submit same to USCIS to secure a work visa. Exhibit 5 (December 20, 2018 Contract between HWPLLC and VAlleis)

127.    In connection with the engagement, Vallesi was to pay HWPLLC $22,000 in retainer fees.

128.    The engagement agreement stated:

> ***Money back-guarantee Policy:*** *The money back guarantee policy only applies for retainers paid on cases fully-submitted to USCIS which were denied up to approval of I-140 portion of the case. In the event of a denial, you may choose to refile, appeal or reopen your case before USCIS or the Board of Immigration Appeals for no additional retainer fee (additional USCIS filing fees will apply); or you may choose*

*to receive full refund of your retainer fee within 30 days of denial. HAYMAN-WOODWARD PLLC is not responsible for refunding any USCIS filing fees, as government fees are non-refundable. Passed the approval of I-140, the money back guarantee will not apply as the approval of I-485 is dependent upon worldwide criminal history search, prior immigration violations, and successful completion of fraud detection interview.*

129.   The engagement agreement contained the dispute resolution provision stated above.

130.   Vallesi signed the engagement agreement.  HW issued invoices to Vallesi and, in return, Vallesi paid HWPLLC $22,000.

131.   Thereafter, HWPLLC prepared a Petition for Vallesi and submitted same to USCIS, but USCIS denied the Petition.

132.   Consistent with the engagement agreement, Vallesi demanded a refund per the Money back-guarantee policy.

133.   HWPLLC did not refund Vallesi' money as required.

134.   HWPLLC concealed from Vallesi that the money he paid for the retainer would not be available to him if he demanded a refund per the Money back guaranty policy.

135.   HWPLLC concealed from Vallesi that he would be unable to utilize the dispute resolution provision and the procedures offered by the District of Columbia Bar due to the fact that no attorney employed by HWPLLC was licensed to practice law in the District of Columbia.

**6.**

**Maranho**

136.   Maranho  is an adult who resides at the address stated above. He is a Brazilian national and an airplane pilot.

137.   On August 6, 2018 Maranho engaged HWPLLC, HWHC and HWGMC.  HWPLLC was engaged in order to prepare a Petition for Maranho and to submit same to USCIS to secure a work visa. Exhibit 6 (August 6, 2018 Contract between HWPLLC and Maranho).

138.   In connection with the engagement, Maranho was to pay HWPLLC $21,000 in retainer fees.

139.   The August 6, 2018 engagement agreement did not contain a Money back-guaranty policy, but on August 7, 2028, the parties, consistent with the August 6, 2018 engagement agreement executed an addendum to the August 6, 2018 agreement which stated:

> **Money back-guarantee Policy:** *The money back guarantee policy only applies for retainers paid on cases fully- submitted to USCIS which were denied. In the event of a denial, you may choose to refile, appeal or reopen your case before USCIS or the Board of Immigration Appeals for no additional retainer fee (additional USCIS filing fees will apply); or you may choose to receive a full refund of your retainer fee. HAYMAN-WOODWARD PLLC is not responsible for refunding any USCIS filing fees, as government fees are non-refundable.*

140.   The engagement agreement contained the dispute resolution provision stated above.

141.   Maranho signed the engagement agreement.  HW issued an invoice to Maranho and in connection with the agreement, Maranho paid HWPLLC $21,000.

142.   Thereafter, HWPLLC prepared a Petition for Maranho and submitted same to USCIS, but USCIS denied the Petition.

143.   Consistent with the engagement agreement, Maranho demanded a refund per the Money back-guarantee policy.

144.   Instead of refunding Maranho, HWPLLC issued a release to Maranho.  Neither the engagement agreement nor the Money back guaranty policy required that Maranho execute a release in order to receive his money.

145.   HWPLLC agreed to refund Maranho $21,000.00.

146.   Even though it was not required by the engagement agreement Maranho signed and was not required in order for him to secure his refund per the policy, Maranho signed the release HWPLLC presented.  Nonetheless, HWPLLC failed to refund Maranho money.

147.   HWPLLC concealed from Maranho that the money he paid for the retainer would not be available to him if he demanded a refund per the Money back guaranty policy.

148.   HWPLLC concealed from Maranho that he would be unable to utilize the dispute resolution provision and the procedures offered by the District of Columbia Bar due to the fact that no attorney employed by HWPLLC was licensed to practice law in the District of Columbia.

**7.**

**Araujo**

149.   Araujo is an adult who resides at the address stated above. He is a Brazilian national and an airplane pilot.

150.   On January 23, 2019, Araujo engaged HWPLLC, HWHC and HWGMC.  HWPLLC was engaged in order to prepare a Petition for Araujo and to submit same to USCIS to secure a work visa. Exhibit 7 (January 23, 2019 Contract between HWPLLC and Araujo).

151.   In connection with the engagement, Araujo was to pay HWPLLC $30,000 in retainer fees.

152.   The engagement agreement stated:

> ***Money back-guarantee Policy:*** *The 65% money back guarantee policy only applies for retainers paid on cases fully-submitted to USCIS which were denied up to approval of I-140 portion of the case. In the event of a denial, you may choose to refile, appeal or reopen your case before USCIS or the Board of Immigration Appeals for no additional retainer fee (additional USCIS filing fees will apply); or you may choose to receive a full refund of your retainer fee within 30 days of denial. HAYMAN-WOODWARD PLLC is not responsible for refunding any USCIS filing fees, as government fees are non-refundable. Passed the approval of I-140, the money back guarantee will not apply as the approval of I-485 is dependent upon worldwide criminal history search, prior immigration violations, and successful completion of fraud detection interview.*

153.   The engagement agreement contained the dispute resolution provision stated above.

154.   Arajao signed the engagement agreement.  On January 18, 2019, HW issued Invoice No. 4681 to Araujo and by January 24, 2019, Araujo paid HWPLLC $30,000.

155.    Thereafter, HWPLLC prepared a Petition for Araujo and submitted same to USCIS, but USCIS denied the Petition.

156.    Consistent with the engagement agreement, Araujo demanded a refund per the Money back-guarantee policy.

157.    HWPLLC did not refund Araujo money as required. He is owed $19,500, 65% of the retainer paid.

158.    HWPLLC concealed from Araujo that the money he paid for the retainer would not be available to him if he demanded a refund per the Money back guaranty policy.

159.    HWPLLC concealed from Araujo that he would be unable to utilize the dispute resolution provision and the procedures offered by the District of Columbia Bar due to the fact that no attorney employed by HWPLLC was licensed to practice law in the District of Columbia.

**8.**

**Ferreira**

160.    Ferreira is an adult who resides at the address stated above. He is a Brazilian national and an airplane pilot.

161.    On June 25, 2018 Ferreira engaged HWPLLC, HWHC and HWGMC.  HWPLLC was engaged in order to prepare a Petition for Ponzi and to submit same to USCIS to secure a work visa. Exhibit 8 (June 25, 2018 Contract between HWPLLC and Ferreira).

162.    In connection with the engagement, Ferreira was to pay HWPLLC $24,000 in retainer fees.

163.    The June 25, 2018 engagement agreement contained a Money back-guaranty policy which stated:

> ***Money back-guarantee Policy:*** *The money back guarantee policy only applies for retainers paid on cases fully- submitted to USCIS which were denied. In the event of a denial, you may choose to refile, appeal or reopen your case before USCIS or the Board of Immigration Appeals for no additional retainer fee*

28

*(additional USCIS filing fees will apply); or you may choose to receive a full refund of your retainer fee. HAYMAN-WOODWARD PLLC is not responsible for refunding any USCIS filing fees, as government fees are non-refundable.*

164.    The engagement agreement contained the dispute resolution provision stated above.

165.    Ferreira executed the engagement agreement.  HW issued an invoice to Ferreira and in connection with the agreement, Ferreira paid HWPLLC $24,000.

166.    Thereafter, HWPLLC prepared a Petition for Ferreira and submitted same to USCIS, but USCIS denied the Petition.

167.    Consistent with the engagement agreement, Ferreira demanded a refund per the Money back-guarantee policy.

168.    Instead of refunding Ferreira, HWPLLC issued a release to Ferreira.  Neither the engagement agreement nor the Money back guaranty policy required that Ferreira execute a release in order to receive his money.

169.    HWPLLC agreed to refund Ferreira $9,000.00.

170.    HWPLLC failed to refund Ferreira money.

171.    HWPLLC concealed from Ferreira that the money he paid for the retainer would not be available to him if he demanded a refund per the Money back guaranty policy.

172.    HWPLLC concealed from Ferreira that he would be unable to utilize the dispute resolution provision and the procedures offered by the District of Columbia Bar due to the fact that no attorney employed by HWPLLC was licensed to practice law in the District of Columbia.

### 9.

### Moreira

173.    Moreira is an adult who resides at the address stated above. He is a Brazilian national and an airplane pilot.

174.    On September 11, 2018, Moreira engaged HWPLLC, HWHC and HWGMC.  HWPLLC

was engaged in order to prepare a Petition for Moreira and to submit same to USCIS to secure a

work visa. Exhibit 9 (Contract between HWPLLC and Moreira).

175.    In connection with the engagement, Moreira was to pay HWPLLC $25,000 in retainer fees.

176.    The engagement agreement stated:

> **Money back-guarantee Policy:** *The money back guarantee policy only applies for retainers paid on cases fully-submitted to USCIS which were denied up to approval of I-140 portion of the case. In the event of a denial, you may choose to refile, appeal or reopen your case before USCIS or the Board of Immigration Appeals for no additional retainer fee (additional USCIS filing fees will apply); or you may choose to receive full refund of your retainer fee within 30 days of denial. HAYMAN-WOODWARD PLLC is not responsible for refunding any USCIS filing fees, as government fees are non-refundable. Passed the approval of I-140, the money back guarantee will not apply as the approval of I-485 is dependent upon worldwide criminal history search, prior immigration violations, and successful completion of fraud detection interview.*

177.    The engagement agreement contained the dispute resolution provision stated above.

178.    Moreira executed the engagement agreement.  On September 12, 2018, HWPLLC issued

Invoice No. 3057 to Moreira in the amount of $25,000 and, in return, by October 25, 2018, Moreira

paid HWPLLC $25,000.

179.    Thereafter, HWPLLC prepared a Petition for Moreira and submitted same to USCIS, but

USCIS denied the Petition.

180.    Consistent with the engagement agreement, Moreira demanded a refund per the Money

back-guarantee policy.

181.    HWPLLC did not refund Moreira's money as required.

182.    HWPLLC concealed from Moreira that the money he paid for the retainer would not be

available to him if he demanded a refund per the Money back guaranty policy.

183.    HWPLLC concealed from Moreira that he would be unable to utilize the dispute resolution provision and the procedures offered by the District of Columbia Bar due to the fact that no attorney employed by HWPLLC was licensed to practice law in the District of Columbia.

**10.**

**Martins and Alves**

184.    Martins is an adult who resides at the address listed above.  He is a Brazilian national and an airplane pilot.

185.    Alves is an adult who resides at the address listed above.  He is a Brazilian national and an airplane pilot.

186.    Before they executed engagement agreements with HWPLLC, Martins and Alves held a joint telephone call with an individual named "Enio".

187.    At all times relevant hereto, Enio was an employee, agent and/or representative of HWPLLC, HWHC and/or HWGMC who had full authority, with the knowledge of HWPLLC, HWHC and/or HWGMC, to make representations to potential clients of HWPLLC, HWHC and/or HWGMC about the services delivered and terms of engagement for the aforementioned entities.

188.    During the conversation between Enio, Martins and Alves, the following exchange occurred (free translation from Portuguese into English):

> **Martins:** *One question we have is about the money. Does the payment must be in a lump sum? Can't we give a down payment and after receiving the visa we give the rest? We are suspicious, as you said yourself.*
> **Ênio:** *I don't know people more suspicious than airplane pilots (laughs).*
> **Martins:** *What will encourage HW to streamline our process?*
> **Ênio:** *Our work will be finished in 90 days. We are going to set up the process and you will win the "Green Card" in 90 days and that's it.*
> **Martins:** *The process in the Immigration will only take 14 months.*
> **Ênio:** *14 months is what the process takes at the Immigration process that's the Immigration´s job. Ours is over. If a "Refile" comes, we will do a "Refile" for you, this is already included.*
> **Martins:** *What if a "Denial" comes?*

31

*Ênio: We apply again for free. But it doesn't happen. As a pilot only it would be the Denial debut because that does not exist.*
*Martins: Are there any failed cases?*
*Ênio: No, no.*
*Martins: Of course, first of all, you guys review the case.*
*Ênio: If the person does not provide the documentation, we will refund the money and "bye-bye" to you. We will then refund it partially money, since you made us waste time, understand? Here it is an American company, if you are honest, you will have your "Green Card". If you are not, this will go wrong for you with us. Because many people who are starting to understand B2 set up a (process) fake and think they will outsmart us and the US government. Brazilians have this thing of thinking that they are smarter than the rest of the whole world. Then they get the "Denial" and think that we will return the money to them. We are not going to give it back because you lied to the American government, understand? Now, an airplane pilot with 6.000, 7.000 flight hours [... silence ...]. **To give you an idea, we will refund your money if the "Green Card" is not issued.***
*Alves: This is cool because there is no risk/it is safe. Is this guaranteed in the contract?*
*Ênio: Yes, under contract. If you have a 10-year history and comply with the required points and more than 6/7 thousand hours of flight [... silence ...].*
*Martins: Yes, we do, everything is documented in an official statement from the company.*

189.    Based on the conversation and believing that if USCIS denied his petition for immigration, a condition which he understood never occurs, on November 1, 2018, Alves signed an engagement agreement with HWPLLC.  Exhibit 10 (Contract between HWPLLC and Alves).

190.     Based on the conversation and believing that if USCIS denied his petition for immigration to the United States, a condition which understood never occurs, on January 11, 2018, Martins signed an engagement agreement with HWPLLC. Exhibit 11 (Contract between HWPLLC and Martins)

191.    The agreement Alves executed did not contain an integration clause.

192.    The agreement Martins executed did not contain an integration clause.

193.    Alves and Martins believed that the refund policy discussed with Enio was a part of their agreement with HWPLLC.

194.    The engagement agreement Alves signed required that he pay HWPLLC $21,000, which he paid.

195.   The engagement agreement Martins signed required that he pay HWPLLC $21,000, which he paid.

196.   Thereafter in connection with both Martins and Alves' engagements, HWPLLC submitted a Petition for each client to USCIS.

197.   USCIS denied the petitions for both Martins and Alves.

198.   Believing based upon their communication with HWPLLC, HWHC and/or HWGMC representative Enio prior to their engagements of HWPLLC, HWHC and/or HWGMC, both Martins and Alves believed they could request a refund of monies paid and that because Enio stated that if a Green Card is not issued that their money will be refunded, Martins and Alves each requested a refund of monies paid.

199.   Despite requesting a refund, and despite promising prior to the engagements that HWPLLC, HWHC and/or HWGMC would refund their money if Green Cards were not issued, HWPLLC, HWHC and/or HWGMC failed to refund their money.

200.   In all, HWHC, HWPLLC and/or HWGMC owes the Plaintiffs $239,000.

201.   Demand has been made to the Defendants that they reimburse Plaintiffs $239,000.

202.   To date, Defendants have failed to pay Plaintiffs any money.

203.   Accordingly, as set forth below, Plaintiffs have been harmed.

## V.

## Causes of Action

## 1.

## Breach of Contract

## HWPLLC

204.    Plaintiffs incorporate herein the factual allegations contained in paragraphs 1 to 203 above as if fully set forth.

205.    In each case identified above, and incorporated herein, each Plaintiff executed an agreement with Defendant HWPLLC, HWHC and/or HWGMC.

206.    Those agreements provided, in pertinent part, that in exchange for payment of a retainer fee, HWPLLC, with the assistance of HWHC and/or HWGMC, would undertake to secure a work permit for each Plaintiff issued by the USCIS.   In each case, the contract contained a provision which provided that should USCIS not issue a work permit or approve of the Petition HWPLLC submitted for the Plaintiff, Plaintiff would be entitled to a refund of monies paid to HWPLLC, HWHC and/or HWGMC.   The retainer agreements are valid and enforceable.

207.    In connection with each Plaintiff, as more fully set forth above, Defendants breached their agreements.   In the case of each Plaintiff, HWPLLC submits a Petition to USCIS, but the Petition was denied and when the Plaintiff requested a refund, HWPLLC, HWHC and/or HWGMC failed to refund the money requested as required. No valid reason exists for Defendants' failures.

208.    Plaintiffs have not breached the agreements in any way and have satisfied all conditions to repayment.

209.    As a direct and proximate cause of Defendants' unjustified breach of the engagement agreements, Plaintiffs have been harmed as more fully set forth below.

WHEREFORE, for the foregoing reasons, Plaintiffs request that this Court enter a judgment against the Defendants, jointly and severally, against the Defendants and award Plaintiffs $244,763.00 plus all costs and fees incurred in this matter and that this Court award any and other relief as this Court deems just and proper in this case.

**2.**

**Violation of the Consumer Protection Procedures Act**

**(D.C. Code §§28-3901, et seq.)**

**All Defendants**

210.   Plaintiffs incorporate by reference herein the factual allegations contained in paragraphs 1 to 209 above as if fully set forth herein.

211.   Plaintiffs are consumers under as that term is defined in D.C. Code 28-3901.  Plaintiffs are persons who, for purposes other than resale, purchased services from HWPLLC and affiliated entities in connection with their efforts to secure work Visas permitting them to work in the United States as airplane pilots.

212.   Defendants are merchants as that term is defined in D.C. Code 28-3901.  In particular, Defendants are businesses who sell consumer services – immigration services – which are subject matter of a trade practice.

213.   As set forth hereinabove, Defendants, as merchants, have been engaging in unfair and deceptive trade practices with respect to the Money back-guarantee policy inserted into the parties' agreements, the dispute resolution provisions of the parties' agreements, Defendants' qualifications and abilities to utilize benefits available to attorneys licensed to practice law in the District of Columbia and businesses authorized to transact business in the District of Columbia.

214.    In soliciting business from Plaintiffs, Defendants did misrepresent and fail to disclose material facts which have the tendency to mislead.  In particular, either orally or in writing, Defendants, individually, or collectively, did tell Plaintiffs each individually, that they would be entitled to a refund in the event that USCIS denied their Petitions, but concealed from Plaintiffs that the money would not be available to them because it was otherwise used and/or distributed by HWPLLC to individuals or entities affiliated with HWPLLC, including, but not limited to, individuals working for HWPLLC, HWHC and/or HWGMC, or entities affiliated with HWPLLC such as HWHC and/or HWGMC, before all contingencies expired in the applicable Money back-guarantee policy applicable to each Plaintiff.

215.    In soliciting business from Plaintiffs, Defendants did misrepresent and fail to disclose fact pertaining to HWPLLC's certification and characteristics, namely, falsely stating that HWPLLC was registered to transact business in the District of Columbia and  misrepresented that parties to the engagement agreement with HWPLLC could not utilize the District of Columbia Bar's dispute resolution program for fee disputes as promised because no person affiliated with HWPLLC is licensed to practice law in the District of Columbia.  In so stating that arbitration through the District of Columbia Bar's dispute resolution program was available and stating that it is registered to transact business in the District of Columbia, HWPLLC represented, falsely represents its sponsorship, approval, status, affiliation certification or connection that it lacks, as a matter of law.

216.    By falsely stating that HWPLLC is registered to transact business in the District of Columbia, HWPLLC falsely represented that the services it provides are in accordance with the standards applicable to entities legally transacting business in the District of Columbia.

217.    By writing in its engagement agreement that all disputes are to be "submitted to binding arbitration pursuant to the District t of Columbia fee dispute procedures" HWPLLC is falsely using

innuendo and ambiguity as to material facts pertaining to HWPLLC's qualifications to utilize dispute resolution procedures available to members of the District of Columbia Bar when those procedures and programs offered to District of Columbia Bar members are not available to HWPLLC or any of its affiliated entities.

218.    The false statements, misrepresentations and omissions about the Money back-guarantee policy, HWPLLC's qualifications and abilities to practice law and conduct business in the District of Columbia and otherwise set forth hereinabove, are material in every respect.   Reasonable persons would attach importance to Defendants' claims about their qualifications to provide immigration services to individuals like Plaintiffs and would guide persons like Plaintiffs to transact business with Defendants had the truth about their ability to practice law in the District of Columbia and utilize the benefits of the District of Columbia Bar and the Money back-guarantee policy.   Indeed, had Plaintiffs known the truth about Defendants' abilities to deliver the services promised in the engagement agreements, and to operate business in the District of Columbia in general, Plaintiffs would not have engaged Defendants to assist them in connection with their efforts to legally secure work as an airplane pilot in the United States.

219.    Plaintiffs reasonably relied on Defendants' actions and statements with respect to the Money back-guarantee policy and Defendants' qualifications.   In each case, based upon their interactions with Defendants, in general, and HWPLLC in particular, Plaintiffs paid Defendants, collectively, more than $250,000, of which $244,763.00 should have been refunded due to HWPLLC's inability to secure work Visas for the Plaintiffs and the Money back-guaranty policies.

220.    Defendants material misrepresentations and material omissions are willful, intentional and malicious, and undertaken without any regard for Plaintiffs' rights.

221.    As a result of Plaintiffs' reliance and Defendants' unfair and deceptive trade practices, Plaintiffs have been harmed.

WHEREFORE, Plaintiffs respectfully request that this Court enter a judgment which awards Plaintiffs $244,763 in actual damages, punitive damages in an amount not less than three times actual damages or $734,289.00, all attorneys' fees incurred in prosecuting this matter, and any and other relief as this Court deems just and proper in this case.

### 3.

### Declaratory Judgment

### (28 U.S.C.A. §2201)

### Piercing the Corporate Veil-Alter Ego Liability

222.    Plaintiffs incorporate the factual allegations contained in paragraphs 1 to 221 above as if fully set forth.

223.    In this case, dispute exists as to who should be responsible for paying the debt of HWPLLC for failing to pay refunds as required by the Policy, whether oral or in writing, in each of the engagement agreements at issue and whether the process by which HWLLC uses to solicit and obtain clients violates the Consumer Protection Procedures Act of the District of Columbia.

224.    It is Plaintiffs view that a unity of ownership exists with respect to the entities involved in this case. HWPLLC is a wholly owned subsidiary of HWHC.

225.    Plaintiffs believe this because HWHC and HWPLLC are all controlled and managed by the same people who make management decisions for HWHC and HWHC subsidiaries such as HWPLLC. Indeed, Freitas, who is not an attorney, signs the engagement agreements for HWPLLC and controls the operations of HWHC.  Carmargo manages HWPLLC and is on the board of directors for HWHC.  Weber serves as general counsel for both entities and oversees such actions

as the resolution of claims by HWPLLC even though he is not listed as being affiliated with HWPLLC.  An attorney named Miguel Risch served as counsel for Plaintiffs when they engaged HWPLLC and served as counsel for HWHC in the past, preparing corporate documents for that entity in Florida.

226.    In managing its subsidiaries, HWHC fails to maintain the distinctions between the entities. All are managed from the same offices in Florida, by the same personnel and management. HWHC and HWPLLC use the same "HW" logo on their websites and post identical messages on their respective Facebook pages.   HWHC maintains such complete control over HWPLLC that HWPLLC has no separate will of its own.   HWHC uses this domination and control over HWPLLC's operations to commit wrongs on clients like Plaintiffs by, among such things, as misrepresenting its qualifications to perform work in the District of Columbia, its ability to take advantage of benefits offered to attorneys licensed to practice law in the District of Columbia, to conceal how money paid by clients like Plaintiffs in connection with legal fees is used when paid in connection with engagement and otherwise as may be disclosed during discovery.  In short, HWHC is using HPPLLC to commit injustice on individuals like Plaintiffs.

227.    HWPLLC's engagement agreements are structured so that when clients engage HWPLLC they are, in fact, engaging HWPLLC as well as HWHC and its subsidiaries.  In this regard, HWHC is siphoning money from HWPLLC, money which should be, but is not, available to refund the money demanded by clients like Plaintiff who engage HWPLLC and have Money back-guarantee policies in their agreements.  Because the money is siphoned off to HWHC and potentially other subsidiaries, HWPLLC is left without the means to pay its debts, such as he refunds at issue in this case.  By siphoning the money from HWPLLC, HWHC leaves HWPLLC undercapitalized and

unable to pay its debts as they are due.  In this case, HWPLLC is unable to pay Plaintiffs the money they paid to HWPLLC in connection with the engagement.

228.    Moreover, Plaintiffs believe that it would be inequitable and unjust if HWHC is not deemed to be the alter ego of HWPLLC.  The Plaintiffs have done nothing wrong, relied on Defendants' representations and victimized by Defendants to the extent they concealed material information from Plaintiffs about the engagement.

229.    Defendants will undoubtedly believe that only HWPLLC is responsible for HWPLLC's debts and the HWHC and/or HWGMC is/are not the alter ego(s) of HWPLLC.

230.    Accordingly, a real dispute exists in this case and litigation is imminent if this Court does not resolve this dispute by making a declaration as to whether HWHC is the alter ego of HWPLLC.

WHEREFORE, for the foregoing reasons, Plaintiffs respectfully request that this Court enter a judgment and declare:

A.  That HWHC is the alter ego of HWPLLC;

B.  That it would be unjust to not have HWHC liable for the debts of HWPLLC;

C.  That because HWHC is the alter ego of HWPLLC and it would be unjust to Plaintiffs if HWHC did not pay the liabilities arising out of this case, HWHC is hereby liable for the debts of HWPLLC based on the fact that it is the alter ego of HWPLLC;

D.  That HWHC is to pay all of the debts and liabilities and judgments awarded herein by this Court in response to Plaintiffs' claims as set forth herein above - $244,763.00 in actual damages plus $744,289.00 in punitive damages plus all attorneys' fees incurred in connection with this matter; and

E.  Otherwise as may be just and proper in this case.

Respectfully submitted,

/s/ Jesse D. Stein_____
Jesse D. Stein, D.C. Bar 465504
Policastri Law, LLC
600 Jefferson Plaza, Suite 308
Rockville, MD 20852
T:      (240) 660-2219
F:      (240) 235-4399
E:      jesse@policastrilawfirm.com

Counsel for Plaintiffs